**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| HEAVEN L. BUCKNER,<br><br>*Plaintiff*,<br><br>v.<br><br>AT&T INC., et al.,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:25-cv-01569-JMD |

**MEMORANDUM AND ORDER**

Heaven L. Buckner, a self-represented litigant, was fired from her job at AT&T. In response, she sued the company and two of its employees for alleged employment discrimination. She presses several different legal theories, including racial and disability discrimination, as well as retaliation.

Her sole allegation of race discrimination is that the AT&T manager, Denise Lynch, once referred to Lynch's training group as the "lynch mob." ECF 1 at 5. Evidently, Buckner was personally offended by that comment, but under binding Supreme Court and Eighth Circuit precedent, that comment alone is insufficient to draw an inference that Buckner was fired because of race. Unlike "an unambiguously racial" and severe "epithet," *Ellis v. Houston*, 742 F.3d 307, 325 (8th Cir. 2014) (Murphy, J.) (citation omitted), the phrase "lynch mob" does not automatically—without more—create a causal inference of race discrimination. Although in certain contexts the phrase might allow a court to infer a racial motive, the term is regularly used as hyperbole (including recently by the Supreme Court), and Lynch is the last name of one of the defendants. Without more allegations about "context,

inflection, tone of voice, local custom, and historical usage," Buckner's claims are insufficient as pleaded. *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006).

Other claims survive, including her claims about disability discrimination and retaliation. But Buckner has not paid the filing fee, and her motion for waiver of the filing fee does not establish inability to pay. The Court will allow those claims to proceed if Buckner pays the filing fee or otherwise makes a sufficient renewed motion to waive the fee.

**Background**

Buckner, who describes herself as an African American and Cherokee woman, brings this action against AT&T and two employees for alleged employment discrimination based on race, color, sex, and disability. She also alleges retaliation and a hostile work environment.

Buckner alleges that she worked for AT&T for approximately one month starting in September 2024. During that probationary training period, her supervisor, Denise Lynch, allegedly referred to a group of primarily black trainees as the "lynch mob." ECF 1 at 5. Buckner further alleges that she informed her union representative of her diagnosed disability, and that she tried to raise concerns with union leadership about the remark, what she believes to be targeted discipline, and a lack of reasonable accommodation.

Buckner states that shortly after these events, AT&T fired her "without due process, union representation, or any meaningful investigation." *Id.* She asserts that AT&T's stated reasons for her termination—including "stretching [her] leg" and "applying makeup"—were pretextual and inconsistent with the treatment of other employees. *Id.* Finally, Buckner alleges that she experienced "degrading and humiliating treatment during [her] termination." *Id.* at 6.

Buckner filed a charge of discrimination with the Equal Employment Opportunity Commission in July 2025 and received a right-to-sue letter later that month. She seeks back pay, compensatory damages, punitive damages, and injunctive relief.

**Motion to Waive Prepayment of Fees**

Buckner has not paid the required filing fee. The Court has discretion to waive that requirement. 28 U.S.C. § 1915(a)(1). But Buckner's application does not establish inability to pay. The question is whether paying the filing fee would prevent Buckner from affording necessary expenses for herself and any dependents. *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). But Buckner's motion for leave to file without prepaying the filing fee states that she has no monthly expenses and an hourly wage of $15. ECF 2 at 5. Buckner's application might be erroneous; for most people, it is improbable not to have any expenses. Also, in her complaint, Buckner states that she is "still unemployed," ECF 1 at 9, but this contradicts her statement that she makes $15 per hour. ECF 2 at 5. So the Court will give Buckner an opportunity to correct her application if needed.

Despite the deficiency in Buckner's application for waiver of fees, the Court proceeds to assess the complaint. "[A] court has the discretion to consider the merits of a case and evaluate an IFP application in either order or even simultaneously." *Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019) (en banc). This Court must "dismiss" aspects of the case "at any time if the court determines that" the complaint "fails to state a claim." 28 U.S.C. § 1915(e)(2). Because it is clear that parts of this suit must be dismissed, the Court does so now.

**Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the Court shall dismiss a complaint filed *in forma pauperis* if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief

may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

To state a claim for relief sufficiently, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must demonstrate a plausible claim for relief, which requires more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In doing so, the Court must "accept as true the facts alleged, but not legal conclusions." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented litigant's complaint under § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam), and liberally construes the complaint, *see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim "within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of

law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume unalleged facts. *See Stone*, 364 F.3d at 914–15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

For claims raised under the ADA, Title VII, or § 1981, a plaintiff bears the initial burden to provide either direct evidence of discrimination or instead indirect evidence by establishing a prima facie case of employment discrimination under the *McDonnell Douglas* burden-shifting framework. *See Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796–97 (8th Cir. 2021) (Title VII); *Canning v. Creighton Univ.*, 995 F.3d 603, 614 (8th Cir. 2021) (ADA); *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014) (Title VII and § 1981). Because *McDonnell Douglas* is "an evidentiary, not a pleading, standard," a plaintiff at the pleading phase "need not plead facts establishing a prima facie case." *Warmington*, 998 F.3d at 796 (citation omitted). Rather, the allegations in a complaint merely "must give *plausible support* to the reduced prima facie requirements that arise under *McDonnell Douglas*, which in turn reduces the facts needed to be *pleaded* under *Iqbal*." *Id.* (cleaned up). "Under the 'simplified notice pleading standard' that governs *McDonnell Douglas* . . . summary judgment motions—not motions to dismiss—should dispose of most unmeritorious claims." *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Still, "the elements of the prima facie case are not irrelevant to a plausibility determination in a discrimination suit," and the "elements are part of the background against which a plausibility determination should be

made." *Warmington*, 998 F.3d at 796 (cleaned up). In other words, *McDonnell Douglas* "may be used as a prism to shed light upon the plausibility of the claim." *Id.* (citation omitted).

## Analysis

### I. AT&T

Buckner alleges that AT&T discriminated against her based on race, color, sex, and disability. ECF 1 at 3–5. She states that her supervisor (a woman whose last name is Lynch) once referred to her trainee group as the "lynch mob." *Id.* at 5. She further alleges that AT&T did not accommodate her disability and terminated her soon after she complained about race-based remarks, targeted discipline, and the lack of accommodation. *Id.* Several of Buckner's claims fail. Others can proceed.

**1.** As to sex discrimination, Buckner's allegations are plainly deficient. Although she checks a box on the complaint saying she was the victim of sex discrimination, she fails to plead any facts supporting that conclusion. "Legal conclusions must be supported by factual allegations." *Warmington*, 998 F.3d at 796 (cleaned up). The complaint includes no factual allegation about sex and thus does not "plausibly plead that the circumstances of her termination give rise to an inference of [sex] discrimination." *Id.* at 797.

**2.** Likewise for race discrimination. Although Buckner provides slightly more than she does for sex discrimination, her brief allegation is insufficient to state a claim.

Direct evidence of employment discrimination requires "evidence showing a specific link between the alleged discriminatory animus and the challenged action, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc) (cleaned up). By contrast, to state a prima facie case of employment

discrimination under Title VII or § 1981, a plaintiff must allege that "she (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) can provide facts that give rise to an inference of unlawful racial discrimination." *Robinson*, 753 F.3d at 754 (cleaned up).

Buckner's allegation about race concerns Denise Lynch, Buckner's "direct supervisor" at AT&T who "exercised significant influence over disciplinary decisions," including "initiating the termination process." ECF 1 at 5. Buckner alleges that Lynch referred to Lynch's training group "as the 'lynch mob.'" *Id.* Lynch's actions are relevant to Buckner's claim against AT&T because an employer may "be vicariously liable for an adverse employment action if one of its agents—other than the ultimate decision maker—is motivated by discriminatory animus and intentionally and proximately causes the action." *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 551 (8th Cir. 2013). Generally, this "cat's paw" theory of employment discrimination is analyzed by the Eighth Circuit like a direct-evidence claim. *Diaz v. Tyson Fresh Meats, Inc.*, 643 F.3d 1149, 1152 (8th Cir. 2011); *see also Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 973, 975, 972 n.7 (8th Cir. 2012) (determining that a plaintiff provided neither sufficient direct evidence nor sufficient indirect evidence to support her employment-discrimination claim, and noting that because she "does not present a submissible case . . . this court need not determine whether she makes out an adequate case for cat's paw liability").

Without more, Lynch's single remark is insufficient to "link[] the termination to an inference of discrimination." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (cleaned up). *Barlow* held that the use of "one . . . ill-advised joke that involved the N-word" was insufficient to establish a prima facie case of discrimination. *Id.* (cleaned up); *cf. Ellis*,

742 F.3d at 328 (Loken, J., joined by Colloton, J., concurring in the judgment) ("[I]n numerous cases we have concluded that some amount of race-related insults or derogatory comments does not create an actionable hostile work environment under either Title VII or § 1983."). As the Eighth Circuit has held, "[d]irect evidence does not include stray remarks in the workplace." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (cleaned up). After all, employment discrimination statutes are not "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Beyond this single remark, Buckner pleads no allegations that would create the inference that Lynch was motivated by racial animus.

That is not to say that a single remark never can be sufficient to state a claim for employment discrimination. *Cf. Willis v. Henderson*, 262 F.3d 801, 809 n.4 (8th Cir. 2001) (noting that "there may be circumstances under which a single incident creates a hostile work environment in violation of Title VII"). For example, in the context of assertions of a hostile work environment, courts have often required proof of "an unambiguously racial epithet" before allowing a claim to proceed based on a single incident. *Ellis*, 742 F.3d at 325 (Murphy, J.) (quoting *Rodgers v. W.–S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)); *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (same).

Absent that kind of unambiguous statement, whether a statement creates an inference of racial animus often turns on context. *Cf. Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1035 (8th Cir. 2006) (holding that the term "slave driver" can be "evidence of racial animus," but only "in certain contexts"). For example, "[f]acially race-neutral statements, without more, do not demonstrate racial animus on the part of the speaker." *Twymon*, 462 F.3d at 934; *see, e.g.*, *id.* (declining to conclude that statements such as "you don't know your

place" and "Midwest nice" were evidence of racial animus). But additional context sometimes can taint an otherwise permissible phrase. In determining whether a statement is evidence of racial animus, "[t]he speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." *Ash*, 546 U.S. at 456; *see, e.g.*, *id.* (holding that the word "boy" can be evidence of racial animus in certain contexts).

Buckner provides none of the context necessary to infer racial animosity. Lynch's single remark is not an "unambiguously racial epithet." Although it can be construed racially in certain contexts in light of the horrid history of mob (in)justice in earlier times, the phrase "lynch mob" is also used in non-racial contexts, including as hyperbole, sometimes by the Supreme Court. *See, e.g.*, *United States v. Windsor*, 570 U.S. 744, 796 (2013) (Scalia, J., dissenting) (accusing five Justices of portraying a majority of Congress and the President as "a wild-eyed lynch mob"); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 480 (1977) (stating that passing a bill of attainder would convert a legislature into a "judge or, worse still, lynch mob"); *see also, e.g.*, *Joe Biden Apologises for 1998 Remark on Lynching*, BBC News (Oct. 23, 2019) (then-Senator Biden describing the Clinton impeachment as a "partisan lynching");[1] Bob Collins, *Social Media Making It Easy to Form Online Lynch Mobs*, Minn. Pub. Radio News (Aug. 15, 2017);[2] Lawrence A. Hamermesh, *Calling Off the Lynch Mob: The Corporate Director's Fiduciary Disclosure Duty*, 49 Vand. L. Rev. 1087 (1996). And although black Americans were the predominant targets and victims of lynching, that historic injustice was not limited to individuals of one race. *See, e.g.*, Janet McConnaughey, *Mayor to Apologize for 1891 Lynching of 11 Italian Americans*, AP News (Mar. 30, 2019) (describing the 1891

---

[1] https://www.bbc.com/news/50147048

[2] https://www.mprnews.org/story/2017/08/15/social-media-making-it-easy-to-form-online-lynch-mobs

lynching of Italian Americans as "the nation's most deadly lynching" in history).[3] Without additional context, the phrase Lynch used can be interpreted in more than one way.

Here, the only context that Buckner's complaint provides is that her supervisor made the comment to a "predominately Black training group . . . during a Microsoft Teams training session" and that the supervisor's last name is Lynch. ECF 1 at 5. That is insufficient context to allow an inference of racial animus. Also, Lynch's remark was not made "during the decisional process." *Twymon*, 462 F.3d at 934; *see id.* (explaining that "an isolated, stray comment unrelated to the decisional process is not direct evidence of discrimination, even if made by a decisionmaker" (cleaned up)). Without more, Buckner's complaint fails to state a claim under the "cat's paw" theory of employment discrimination.

Likewise, Buckner's complaint fails to allege facts sufficient to plausibly support a prima facie case of employment discrimination for the same reasons stated above. *Cf. Guimaraes*, 674 F.3d at 974 (holding that a supervisor's reference to an employee's "green card" was not a "code word for her national origin" and concluding that "[n]o reasonable jury could find that the 'green card' statement gives rise to an inference of national-origin discrimination").

Another way Buckner could try to establish a prima facie case of discrimination is by "showing more-favorable treatment of similarly-situated employees who are not in the protected class." *Id.* (quoting *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011)). Buckner alleges that Lynch issued inaccurate attendance warnings, and she also alleges that AT&T's stated reasons for terminating her—"e.g., stretching [her] leg, applying makeup" during a training call—were "inconsistent with how other employees were treated." ECF 1

[3] https://apnews.com/article/2a592e4f9dde4d81946252334720b49d

at 5. But Buckner never mentions the protected characteristics of other employees. Nor does she allege that they were similarly situated to her. Thus, the Court is unable to infer that in these incidents Buckner was treated differently based on protected characteristics. *Guimaraes*, 674 F.3d at 974 (noting that plaintiff "does not identify a similarly situated employee outside of her protected class who was treated more favorably"); *see also Warmington*, 998 F.3d at 798 (noting that a plaintiff's failure to "specify the sex of all the 'other coaches' she was treated differently than" left the court "unable to conclude she was only treated differently than other *male* coaches").

**3.** In contrast, Buckner's claim of disability discrimination can proceed. To state a prima facie case of disability discrimination in violation of the ADA, a plaintiff must allege that she "(1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability." *Denson v. Steak 'n Shake*, 910 F.3d 368, 370 (8th Cir. 2018) (cleaned up). Buckner alleges that she disclosed a "diagnosed disability" to a union representative who "had a close personal and professional relationship" with Lynch. ECF 1 at 5. She alleges that she was terminated "days later." *Id.* The Eighth Circuit has held that close "temporal proximity," a "matter of weeks," between disclosure of a disability and adverse employment action is enough to establish a prima facie case of discrimination. *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113 (8th Cir. 2001).[4] The facts in Buckner's complaint give plausible support to a prima facie case of discrimination under the ADA.

[4] A year later, the Eighth Circuit held that "a 'mere coincidence of timing' can rarely be sufficient to establish a submissible case" of retaliation. *Kipp v. Missouri Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (collecting cases). Yet more recently, the Eighth Circuit said, "[e]ven at summary judgment, a plaintiff can establish a causal connection

**4.** Similarly, Buckner's complaint plausibly supports a claim of retaliation under Title VII, § 1981, and the ADA. To state a prima facie case of retaliation, an employee must show "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *Wilson*, 850 F.3d at 372 (citation omitted). To establish a prima facie case, a plaintiff "need not establish that the conduct [s]he opposed was in fact prohibited under Title VII." *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007); *see also Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049, 1053 (8th Cir. 2024) (explaining that § 1981 retaliation claims are evaluated under the same *McDonnell Douglas* framework as are Title VII retaliation claims). She just needs to establish that she had a good-faith, reasonable belief that the complained-of conduct was unlawful. *Bakhtiari*, 507 F.3d at 1137. So too under the ADA. *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999) (explaining that filing a grievance is protected activity under the ADA so long as plaintiff "had a reasonable good faith belief in the allegations contained in the grievance"). Although the Court holds that the "lynch mob" remark made by Lynch is not sufficient to infer that Lynch intentionally and proximately caused Buckner to be fired because of her race, Buckner alleges that she "[o]pposed" the remark and shortly after was "abruptly terminated" to "silence" her. ECF 1 at 5. Buckner thus "alleges but-for causation." *Wilson*,

---

between his complaints and an adverse action through circumstantial evidence, such as the timing of the two events." *Wilson*, 850 F.3d at 373 (cleaned up). The Eighth Circuit has elaborated that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1087–88 (8th Cir. 2010) (citation omitted), *abrogated on other grounds by Torgerson*, 643 F.3d 1031; *see also id.* (noting that the Eighth Circuit has held that a two-week period was close enough to establish causation (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002)). To the extent the logic of these decisions might be in tension with each other or with *Sprenger*, the Court will not resolve that tension without briefing.

850 F.3d at 373 (close temporal proximity can be sufficient to allege but-for causation). Although an extreme closeness in time may sometimes be evidence that there was not retaliation, *e.g.*, *Andersen v. Midland Lutheran College*, No. 8:11-cv-00093-TDT, 2012 WL 12884565, at *12 (D. Neb. Nov. 5, 2012), the Court holds that, at this early stage in the litigation, Buckner's complaint alleges facts that plausibly support a prima facie case of retaliation.

**5.** Finally, Buckner has not provided plausible support for her claim of a hostile work environment. "To establish a prima facie case for hostile work environment, a plaintiff must show: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a casual nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action." *Warmington*, 998 F.3d at 799. As to the fourth element, "[a]t the pleading phase, the court must determine whether the alleged harassment is 'severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered.'" *Id.* (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)). This is a "high threshold." *Id.* at 800 (quoting *Blomker*, 831 F.3d at 1057). The Court looks at the "totality of the circumstances," including the "frequency and severity of the discriminatory conduct, whether the conduct was physically threatening or humiliating, as opposed to a mere offense utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Id.* (cleaned up). Also, the Court examines the evidence "as a whole," treating allegations as "examples," not as "an exhaustive litany" of incidents. *Ellis*, 742 F.3d at 319 (Murphy, J.) (citation omitted). Nevertheless, the Supreme Court has

"cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). Considering Buckner's complaint as a whole, the Court concludes that her complaint does not plausibly allege a hostile work environment.

First, Buckner alleges that Lynch referred to her "predominantly Black training group as the 'lynch mob' during a Microsoft Teams training session." ECF 1 at 5. As already explained, Buckner has failed to allege any additional context necessary to draw an inference of racial harassment, especially in light of the "obvious alternative explanation" that Lynch's single use of the term "lynch mob" was a reference to her own last name. *Iqbal*, 556 U.S. at 682 (2009) (citation omitted). And even assuming that the Court could draw the inference, the single remark is legally insufficient to establish a claim for a hostile work environment. Although a single, "extremely serious" incident "may be sufficient to establish an effect on an employee's work condition," *Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018), "Title VII . . . is not necessarily violated by a few isolated racial slurs." *Powell v. Mo. State Highway & Transp. Dep't*, 822 F.2d 798, 801 (8th Cir. 1987). Lynch's remark was not unambiguously a racial slur, and it was not directed specifically at Buckner. *See Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011) (noting that racist graffiti was not "directed at" the plaintiff). Buckner identifies a single ambiguous incident, not a "steady barrage of opprobrious racial comment[s]." *Elmahdi v. Marriott Hotel Servs.*, 339 F.3d 645, 653 (8th Cir. 2003) (citation omitted); *see also Cariddi v. Kan. City Chiefs Football Club, Inc.*, 568 F.2d 87, 88 (8th Cir. 1977) ("casual conversation" not sufficient for liability). At most, Lynch's comment was a "mere offensive utterance." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th

Cir. 2005) (quoting *Elmahdi*, 339 F.3d at 653). That is not sufficient to satisfy the high threshold for a claim of a hostile work environment.

Second, as discussed above, Buckner alleges that Lynch issued inaccurate attendance warnings, and she also alleges that AT&T's stated reasons for terminating her—"e.g., stretching [her] leg, applying makeup" during a training call—were "inconsistent with how other employees were treated." ECF 1 at 5. Disparate treatment of employees of different races might be evidence of a hostile work environment. *See Sallis*, 408 F.3d at 476; *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 353 (8th Cir. 1997); *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 944 (8th Cir. 2010). But Buckner never mentions the protected characteristics of other employees. Thus, the Court is unable to conclude that Buckner was treated differently based on protected characteristics. *Cf. Warmington*, 998 F.3d at 798.

Finally, Buckner alleges that she was "subjected to degrading and humiliating treatment during [her] termination—including being escorted from the building under surveillance." ECF 1 at 6. But this conduct occurred during and after termination, so it cannot be said to have "unreasonably interfered with [her] work performance." *Warmington*, 998 F.3d at 799 (quoting *Blomker*, 831 F.3d at 1057). Also, Buckner does not provide any facts to suggest that her being escorted out of the building had "a racial character or purpose." *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 893 (8th Cir. 2005) (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004)). Without more facts, Buckner's complaint does not plausibly allege a hostile work environment.

## II. Individual defendants

Buckner asserts the same claims against Lynch and another AT&T employee, Jennifer Collins. But Title VII and the ADA do not provide for individual liability, so the Court must dismiss all Title VII and ADA claims against the individual defendants. *See Bonomolo-Hagen v. Clay Cent.-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997) (per curiam) ("[S]upervisors may not be held individually liable under Title VII."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) (noting that three circuits have held there is no liability under Title I of the ADA against persons who do not otherwise qualify as employers); *Breidenbach v. Shillington Box Co., LLC*, No. 4:11-cv-01555-JCH, 2012 WL 85276, at *3–4 (E.D. Mo. Jan. 11, 2012) (collecting cases).

Buckner also presses a claim under § 1981. Section 1981 protects the right of persons to "make and enforce contracts," including "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationships." 42 U.S.C. § 1981(b). Buckner's employment with AT&T was a "contractual relationship." *Skinner v. Martiz, Inc.*, 253 F.3d 337, 340 (8th Cir. 2001) (explaining that even "at-will" employment is a "contractual relationship" for purposes of § 1981). At this early stage, the Court will assume without deciding that § 1981 permits individual liability against defendants who personally engage in discriminatory conduct. *See Jones v. Forrest City Grocery Inc.*, 564 F. Supp. 2d 863, 869 (E.D. Ark. 2008) (citing district court decisions, but acknowledging that there is "no Eighth Circuit" precedent on point).

Even so, Buckner's claim fails. To state a prima facie case of race discrimination under § 1981, a plaintiff must show that "(1) [she] is a member of a racial minority, (2) the defendant intended to discriminate against [her] on the basis of race, and (3) the

discrimination concerned an area enumerated by the statute." *Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002). As stated above, Buckner has failed to provide sufficient context for a court or jury to draw the necessary inference that Lynch had racially discriminatory intent. As to retaliation, Buckner provides no allegation that Lynch knew of Buckner's complaints to union leadership and thus had an opportunity to retaliate.

The complaint also contains no factual allegations describing conduct by Collins or connecting her to the alleged discrimination, discipline, or termination. Because § 1981 requires personal involvement, the claim against Collins must be dismissed. *See Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009) (explaining that § 1981 liability requires, among other things, interference with protected activity "by the defendant").

**Conclusion**

For the foregoing reasons, the Court rejects Buckner's motion to proceed *in forma pauperis*, dismisses the claims against the individual defendants, and dismisses the claims for race and sex discrimination and the claim asserting a hostile work environment.

If Buckner pays the filing fee or establishes why she is unable to do so, the Court will direct the Clerk to issue process on her Title VII, ADA, and § 1981 claims against AT&T for disability discrimination and retaliation.

Accordingly,

**IT IS HEREBY ORDERED** that Buckner's motion for leave to proceed *in forma pauperis*, ECF 2, is **DENIED**.

**IT IS FURTHER ORDERED** that if Buckner wishes to proceed, then she must pay the filing fee or file another application establishing why she cannot by October 8, 2026.

**IT IS FURTHER ORDERED** that all claims against the individual defendants and the claims of race and sex discrimination and the claim asserting a hostile work environment are **DISMISSED** without prejudice under 28 U.S.C. § 1915(e)(2).

Dated this 17th day of September, 2026

Joshua Divine

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE
FOR THE EASTERN AND WESTERN
DISTRICTS OF MISSOURI